UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **WILL BROYLES and RING MEDIA GROUP, LLC** | **CASE NO: _____** |
| **VERSUS** | **JUDGE:** |
| **ALVIN TOPHAM, DOUGLAS GUILLORY AND KIM ADDISON** | **MAGISTRATE JUDGE:** |
| | **REQUEST FOR TRIAL BY JURY** |

**COMPLAINT FOR DAMAGES**

The Complaint of WILL BROYLES and RING MEDIA GROUP, LLC ("Ring Media"), plaintiffs herein, respectfully show:

1.

Plaintiffs bring this action to recover from the defendants compensatory damages, punitive damages, reasonable attorney's fees, judicial interest, and all costs and expenses incurred in these proceedings, pursuant to 42 United States Code, Sections 1983 and 1988, and the Fourth Amendment to the Constitution of the United States of America, other applicable statutes and constitutional provisions, and Louisiana law, based upon the following:

**PARTIES**

2.

The plaintiffs in this proceeding are Will Broyles, a resident of Shreveport, Caddo Parish, Louisiana and Ring Media Group, LLC, a Texas limited liability company with its principal place

of business and domicile in Caddo Parish, Louisiana.

3.

Made defendants herein are the following:

    a.    Alvin Topham, a person of the full age of majority, who is a domiciliary and resident of and who was at all pertinent times herein a commissioner on the Louisiana Boxing and Wrestling Commission.

    b.    Douglas "Gil" Guillory, a person of the full age of majority, whose domicile and residence are 303 Quail Drive, Lafayette, Louisiana 70508 and who was at all pertinent times herein a licensed promoter of mixed martial arts fights in Louisiana; and

    c.    Kim Addison, a person of the full age of majority, whose domicile and residence are in Caddo Parish, Louisiana and who was at all pertinent times herein a licensed promoter of mixed martial arts fights in Louisiana.

Plaintiffs sue the defendants in their individual capacities.

## JURISDICTION AND VENUE

4.

This is a civil action seeking damages against defendants for committing acts, under color of law, which deprived plaintiffs of rights secured under the Constitution and laws of the United States and which deprived plaintiffs of liberty and/or property without due process of the law, as guaranteed to the plaintiffs Fourth Amendment to the United States Constitution, and other statutes and constitutional provisions.

5.

This Court has jurisdiction pursuant to 42 U.S.C §§ 1983 and 1988, and 28 U.S.C., §§ 1331 and 1343.  Jurisdiction of this Court is further invoked pursuant to 28 U.S.C § 1367, in its exercise of supplemental jurisdiction over Louisiana state law claims that are so related to claims in the action within the District Court's original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution.

6.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b).

**STATEMENT OF FACTS**

7.

Because Alvin Topham favored certain mixed martial arts (MMA) promoters and disfavored others, including the plaintiffs, Topham (1) enforced non-existent rules against Ring Media Group, LLC and Will Broyles, (2) intentionally tried to steer business to favored promoters and away from Ring Media and Broyles, (3) illicitly loaded up plaintiffs' MMA shows with unnecessary and often incompetent "officials" and improper and excessive fees and (4) created (along with his co-defendants) a sham prosecution of an administrative complaint against plaintiffs.  All of these actions (though particularly the sham prosecution) were designed to disrupt the plaintiffs' business and help and aid promoters favored by Topham.

8.

Will Broyles and Ring Media have been engaged in the business of promoting and marketing mixed martial arts shows in a number of states, including Louisiana.  Mixed martial arts entails a combination of wrestling, boxing and traditional martial arts such as judo and tae kwon do.

9.

Mixed martial arts in Louisiana are regulated by the Louisiana State Boxing and Wrestling Commission ("LSBWC"), a commission of the State of Louisiana. The LSBWC derives its powers exclusively through its published regulations and the Louisiana statutes. Specifically, The LSBWC derives its powers from La. R.S. 4:61 et seq. and Title 46, Part XI of the Louisiana Administrative Code, which sets out the Professional and Occupational Standards for boxing and wrestling.

10.

Alvin Topham is and has been the chairman of the LSBWC. He is and has been the commissioner primarily responsible for regulating mixed martial arts.

11.

The LSBWC is an entity without offices or any other physical presence in the State of Louisiana. Its records are maintained and stored at the personal offices of one or more of the LSBWC commissioners and at the personal residence of Alvin Topham. It has no phone number, as its primary phone line is the personal cell phone of Alvin Topham.

12.

Will Broyles and Ring Media had become the largest Louisiana owned promoter of mixed martial arts in the state. They conducted and promoted more shows than any other promoter.

13.

Plaintiffs' business model was unique in Louisiana. Most promoters were locally based and rarely promoted more than one or two shows at one time. Plaintiffs would promote a number of shows at one time, reserving dates well in advance to avoid last-minute venue bookings that tended to be problematic bookings.

14.

As Will Broyles and Ring Media began promoting more shows, Topham started engaging in favoritism towards other promoters. He would arbitrarily cancel an MMA show date for plaintiffs while providing one to a promoter with a former business connection to Topham.

15.

Topham then created an unwritten, unpromulgated rule that purportedly limited the date reservations of MMA promoters to two show dates at one time. This sham "regulation" was nothing more than Topham's personal method of trying to limit the expansion of plaintiffs' shows. It would rarely, if ever, have any effect on any MMA promoter other than plaintiffs.

16.

Topham, together with defendants Guillory and Addison, then conspired to create a sham administrative prosecution of Broyles and Ring Media.

17.

The sham administrative prosecution started with Chad Davis, a convicted felon who had a previous business dispute with plaintiffs. Topham permitted Davis, who could not legally promote a fight due to his criminal record and lack of a promoter's license, to attempt to promote one fight directly and to conduct another through a surrogate promoter. In turn, Davis provided sham testimony against Broyles.

18.

Guillory and Addison, who were competitors of Ring Media and Broyles, joined in the administrative prosecution solely to try to quash the plaintiffs' competitive business.

19.

During the lead up to the administrative "hearing," Topham improperly undertook both an adjudicatory role and a prosecutorial role. While still in his adjudicatory role, he contracted and interviewed witnesses in a prosecutorial role. He would telephone customers of plaintiffs and falsely inform them that Broyles promoter's license had been suspended. This one done solely to try to induce the customers to cancel their show agreement with plaintiffs.

20.

On October 15, 2009, the sham prosecution was converted to a non-regulatory, *ultra vires* "hearing" to show cause whether there were grounds to administratively prosecute plaintiffs. This was the last hearing of any kind on the issue.

21.

Following the hearing, Topham continued to enforce non-existent "rules" against plaintiffs. The "two show date" limits were enforced, and Topham added some more "Topham rules." An events coordinator was appointed to plaintiffs' fights, in violation of the Louisiana statutes which only permit an "events coordinator" for special boxing (not MMA) events. *See La. R.S. 4:79 (... "the commission may appoint an events coordinator, not on the commission, for any **boxing** event ...").*

22.

Topham started to load plaintiffs' shows up with other unnecessary officials (and did not do so with respect to other promoters who were holding similar shows). Plaintiffs had to pay for all of these unnecessary (and often incompetent) officials, which included extra referees, inspectors, and the "events coordinator" referenced in paragraph 20. On more than one occasion, the "inspector" did nothing more than become intoxicated and was removed from the show by the police.

23.

Plaintiffs, who had always used top flight referees, were required to use commission appointed referees which were often competitors of plaintiffs. While some were competent, others were cronies of Topham who did not properly perform their duties. Other promoters were not saddled with the additional officials that Topham assigned to plaintiffs' events, and were allowed to often select their own officials. Topham's referees would show up late, delaying the show.

24.

Topham would also aggressively enforce commission rules and regulations against plaintiffs while at the same time ignoring the rules for promoters who curried favor with Topham.

25.

Topham continued to try to steer the lucrative casino business away from plaintiffs and into the hands of promoters favored by Topham.

26.

In November of 2009, Topham, together with an MMA promoter named Dana Pitcher, set up and advertised a sham MMA show in Alexandria, Louisiana solely to interfere with a show put on Broyles and Ring Media at an Alexandria area casino. Pitcher's advertising for his non-existent show was designed to split the local market and to make the plaintiffs' casino show less successful. Pitcher was given broad dispensation on LSBWC fees and show reservation requirements, and both Topham and Pitcher knew that Pitcher had no intention of ever actually having the show. This was not the first time that Topham had assisted Pitcher in setting up a sham show. Topham and Pitcher both participated in setting up Pitcher's sham Alexandria show for the purpose of detracting from the plaintiffs' casino show and getting Guillory into the casino as a promoter.

27.

On December 7, 2009, Topham memorialized some of his "Topham Rules" that were imposed by Topham without going through the specific procedures adopted by Louisiana for administrative rules and regulations. These "regulations" included the "only two approved show dates" regulation that was never enforced by anyone other than Topham or against anyone other than plaintiffs.

28.

Topham enforced his "Topham Rules" more stringently against plaintiffs. In the rules, it is decreed that "special consideration may be given to casino and televised shows." However, Topham would not give plaintiffs' casino shows any "special consideration" and would instead defer to other promoters who were trying to schedule events that were not being held at a casino.

29.

All of these practices have been continuous in nature. The micro-enforcement of real regulations and the enforcement of unlawful and non-promulgated regulations has virtually shut down the plaintiffs' MMA business in Louisiana.

**CAUSES OF ACTION**

**COUNT I – 42 U.S.C. § 1983 CLAIM AGAINST ALVIN TOPHAM
FOR DEPRIVATION OF DUE PROCESS IN VIOLATION OF THE
FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

30.

The conduct of Topham deprived plaintiffs of procedural and substantive due process in violation of the Fourteenth Amendment of the United States Constitution, as secured by 42 U.S.C. §§ 1981, 1983, 1985, and 1988.

31.

Acting under color of law, Topham arbitrarily, capriciously and with deliberate indifference and callous disregard for plaintiffs' rights, (a) deprived plaintiffs of their property interest in their MMA shows and LSBWC license and (b) made arbitrary and capricious decisions concerning plaintiffs that were unreviewable, which thereby deprived plaintiffs of their rights to due process in violation of the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. §§ 1983 and 1988.

### COUNT II – STATE LAW CLAIMS AGAINST DEFENDANTS

32.

This Court, exercising its supplemental jurisdiction against defendants Kim Addison and Douglas "Gil" Guillory, has jurisdiction over claims against these two defendants.

33.

Pursuant to Louisiana Civil Code Article 2315, plaintiffs asserts a claim for damages against all defendants.

34.

The actions of Guillory and Addison constitute unfair trade practices under Louisiana law.

35.

The actions of all defendants constitute an abuse of process.

### DAMAGES

36.

As a result of the foregoing, plaintiffs are entitled to an award of compensatory damages against all defendants, punitive damages against Alvin Topham, attorneys' fees, judicial interest,

expert witness fees, costs, and all other relief to which they may be entitled by law or equity.

## REQUEST FOR TRIAL BY JURY

37.

Plaintiffs request to have this case tried by a jury and show that they are entitled to the same.

## PRAYER

WHEREFORE, PLAINTIFFS pray that after due proceedings are had that there be judgment rendered in their favor, holding defendants liable as requested in this Complaint and awarding appropriate damages as requested in this Complaint.

Submitted with the utmost respect,

 s/ Bryce J. Denny
BRYCE J. DENNY
La. Bar Roll No. 22763
209 Polk
Mansfield, Louisiana 71052
Telephone: (318) 871-5007
Facsimile:  (318) 871-5006
Email: bryce@brycedenny.com