RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 6/1/12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

WILLIAM BROYLES, ET AL.                    DOCKET NO. 1:10-cv-01580

VERSUS

                                           JUDGE DEE D. DRELL
DOUGLAS GUILLORY, ET AL.                   MAGISTRATE JUDGE JAMES D. KIRK

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint filed by plaintiffs, William Broyles III ("Broyles") and Ring Media Group, L.L.C. ("Ring Media"), on October 15, 2010 (Doc. 1). The complaint is filed pursuant to pursuant to 42 U.S.C. §1983 and §1988 and contains supplemental state law claims.

Both Broyles and Ring Media are promoters of mixed martial arts ("MMA") fights in several states including Louisiana. The named defendants, sued in their individual capacities, are Douglas "Gil" Guillory ("Guillory"), Kim Addison ("Addison") and Alvin Topham ("Topham").

Broyles and Ring Media contend that Topham, as the Commissioner of the Louisiana State Boxing and Wrestling Commission ("LBWC"), favored certain MMA promoters and disfavored others, including Broyles and Ring Media, by (1) enforcing non-existent rules against Broyles and Ring Media; (2) intentionally trying to steer business to favored promoters and away from Broyles and Ring Media; (3) illicitly loading up Broyles and Ring Media's MMA shows

with unnecessary and often incompetent officials and improper and excessive fees; and (4) creating (with his co-defendants) a sham prosecution of an administrative complaint against plaintiffs.

They further contend all of these actions were designed to disrupt business and help aid prompters who were favored by Topham. Plaintiffs contend these actions deprived them of due process and deprived them of their property interests in their MMA shows and LBWC license. They also argue that Topham made arbitrary and capricious decisions concerning plaintiffs that were unreviewable, thereby depriving plaintiffs of their right to due process.

Plaintiffs further allege this court has supplemental jurisdiction over their state law claims against Addison and Guillory, pursuant to La.C.C. art. 2315 for unfair trade practices and for abuse of process.

For relief, plaintiffs request compensatory damages against all defendants, punitive damages against Topham, attorney's fees, judicial interest, expert witness fees, costs and all other relief to which they may be entitled. Plaintiffs set forth a request for a jury trial.

Defendants Addison and Guillory answered the complaint on June 29, 2011 and July 1, 2011, respectively (Doc. 12 and 13). On July 11, 2011, Topham filed a motion to dismiss pursuant to Fed.R.Civ.P. 4(b) and 12(b)(5) which was denied (Doc. 15, 16, 29 and 30).

On March 30, 2012, Topham filed a motion to dismiss pursuant

to Fed.R.Civ.P. 12(b)(6) and on April 18, 2012, Addison filed her motion which mirrored the arguments raised by Topham (Doc. 31 and 35). In light of the fact the motions were nearly identical, plaintiffs filed a single response to the motions (Doc. 42).

The motions and the response are currently before the undersigned for report and recommendation.

## Law and Analysis

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss an action for "failure to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6) motion, the court must accept as true the well-pleaded facts in the plaintiff's complaint and must construe the facts in a light most favorable to the plaintiff. Arias-Benn v. State Farm Fire & Cas. Ins. Co., 495 F.3d 228, 230 (5th Cir.2007). However, the Court need not "'accept as true conclusory allegations, unwarranted factual inference, or legal conclusions.'" Id., quoting Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir.2005). To survive a Rule 12(b)(6) motion, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

As stated by the United States Supreme Court in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577-578 (1972):

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Topham and Addison argue plaintiffs fail to state a claim as plaintiffs do not have a property right in the LBWC license. In support, they cite Louisiana Revised Statute 4:65, entitled "Licenses; fees; bond, regarding boxing and wrestling". The statute states in pertinent part:

> A. (1) The commission may issue a promoter's license to hold, conduct or give boxing, mixed technique event, and wrestling contests or exhibitions to any applicant, including, in the case of corporations, its officers and stockholders, who, in the discretion of the commission, has the financial responsibility experience, character, and general fitness, to be such that the licensing of such applicant will be consistent with the public interest, convenience, or necessity and with the best interest of boxing, mixed technique event, or wrestling generally and in conformity with this Chapter and the rules and regulations of the commission. Such licenses shall be issued for the calendar year, and the commission may require applicants therefor to submit their applications prior to the commencement of the calendar year. **The holding of such a license shall not be construed to grant the licensee a vested right to**

> have the license renewed the following calendar year. The number of licenses to be issued to hold, conduct or give boxing, mixed technique event, or wrestling contests or exhibitions in any particular parish shall be determined by the commission, in its discretion consistent with the public interest, convenience, or necessity and with the best interests of boxing or wrestling in general.
>
> ...
>
> C. The commission may for cause, and after a hearing, revoke or suspend any license issued under the provisions of this Chapter, or may fine the holder of such license the sum of not more than one thousand dollars, or both, for any of the following reasons:
> (1) Violation of any provision of this Chapter;
> (2) Violation of any of the rules or regulations of the commission;
> (3) Finding that the licensee has committed an act detrimental to the interests of boxing, mixed technique event, or wrestling generally or to the public interest, convenience or necessity;
> (4) Finding that the licensee has been guilty of or attempted any fraud or misrepresentation in connection with boxing, mixed technique event, or wrestling; or
> (5) Finding that a licensee is under suspension or has had his boxing, mixed technique event, or wrestling license revoked in another jurisdiction.

(Emphasis added).

Topham and Addison contend that the portions of the statute as set forth above clearly show no property interest exists with respect to the possession or exercise of a LBWC license. In further support, they cite the 1927 case of <u>State ex rel. Orleans Athletic Club v. Louisiana State Boxing Commission</u>, 163 La. 418, 112 So. 31 (La. 1927) in which the Louisiana Supreme Court held that a license issued under Act 123 of 1920 (then governing licensing of boxing and wrestling) created a permit or privilege,

5

not a property right. In reaching that decision, the court relied upon the fact the license could be revoked without cause, notice or hearing.

There are several problems with Topham and Addison's argument. First, Revised Statute 4:65 specifically states that a license cannot be suspended or revoked unless there is cause and a hearing is held. These are the basic elements of procedural due process, so while the statute does not specifically state that the holder of the license has a vested property interest, it is implicit as due process protections are afforded within the statute.

Second, the Louisiana Supreme Court has found that "[i]t has been the uniform trend throughout the country to require that a hearing be held prior to the revocation, suspension, or modification of an existing license to engage in a business or profession." Paillot v. Wooton, 559 So.2d 758 (La. 1990), quoting Louisiana State Bar Association v. Ehmig, 277 So.2d 137, 139 (La. 1973). See also, D&J Fill, Inc. V. State Dept. of Environmental Quality, 2009 WL 345092 (La.App. 1st Cir. 2009). The plaintiffs engaged in the business of promoting of MMA events and were in possession of a license to do so. Thus, they were entitled to due process prior to any suspension or revocation of the license.

Third, the case relied upon by Topham and Addison is from 1927. The statute examined therein was Act 123 of 1920, not Revised Statute 4:65. Though the statutes may serve a similar

purpose, Act 123 of 1920 did not provide for suspension or revocation only for cause and after a hearing. Further, in reaching it conclusion, the court makes a distinction between a right and a privilege. However, when considering whether property right exist and due process is required, "the wooden distinction between 'rights' and 'privileges'" no longer exists. Roth, 408 U.S. at 571.

## Conclusion

In light of the foregoing, IT IS RECOMMENDED that Topham and Addison's motions to dismiss for failure to state a claim (Doc. 31 and 35) be DENIED.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by**

the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana on this 31st day of May, 2012

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE