# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| **WILL BROYLES and RING MEDIA GROUP, LLC** | **CASE NO.:1:10-CV-01580-DDD-JDK** |
| | **JUDGE DEE DRELL** |
| **VERSUS** | **MAGISTRATE JUDGE JAMES DAVID KIRK** |
| **ALVIN TOPHAM, DOUGLAS GUILLORY AND KIM ADDISON** | **REQUEST FOR TRIAL BY JURY** |

**DEFENDANT ALVIN TOPHAM'S MEMORANDUM
ADDRESSING ISSUES OF SUBJECT MATTER JURISDICTION
IN RESPONSE TO COURT'S JANUARY 4TH, 2013 RULING**

Respectfully submitted,
**JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL**

By: ___s/   Victoria R. Murry  (18584)
**Assistant Attorney General**

**LOUISIANA DEPARTMENT OF JUSTICE
LITIGATION DIVISION**
429 Murray Street, 4th Floor (71301)
Post Office Box 1710
Alexandria, LA 71309
Telephone:  (318) 487-5944
Facsimile: (318) 487-5826

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **WILL BROYLES and RING MEDIA GROUP, LLC** | **CASE NO.:1:10-CV-01580-DDD-JDK** |
| | **JUDGE DEE DRELL** |
| **VERSUS** | **MAGISTRATE JUDGE JAMES DAVID KIRK** |
| **ALVIN TOPHAM, DOUGLAS GUILLORY AND KIM ADDISON** | **REQUEST FOR TRIAL BY JURY** |

**DEFENDANT ALVIN TOPHAM'S MEMORANDUM**
**ADDRESSING ISSUES OF SUBJECT MATTER JURISDICTION**
**IN RESPONSE TO COURT'S JANUARY 4TH, 2013 RULING**

**TABLE OF CONTENTS:**

Title Page ............................................................................................................................

Table of Contents ......................................................................................................... i

Table of Cases........................................................................................................... ii

Introduction................................................................................................................1

Issue One........................................................................................................... 1-4

Issue Two ......................................................................................................... 4-11

Issue Three........................................................................................................ 12-15

Issue Four ......................................................................................................... 16-19

Conclusion ......................................................................................................... 20-22

Certificate of Service......................................................................................................23

## TABLE OF CASES

Board of Regents, et al. vs. Roth, etc. 408 U.S. 564; 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972)…………………………………………………………………………………16,18

Burford et al. vs. Sun Oil CO, et al., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)………………………………………………………………………..6,7,8,11,20

Daniels vs. Williams, 106 S.Ct. 677 (January 21, 1986)………………………………………..14

Edelman vs. Jordan, 415 U.S. 651, 94 S.Ct 1347, 39 L.Ed 2d 662 (1974)……………………3,20

Ford Motor Co., vs. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)..3

Hudson vs. Palmer, 468 U.S. 517, 104 s.Ct. 3194, 82 L.Ed 2d 393 (1984)………..….13,14,15,21

Holloway vs. Walker 790 F.2d 1170 (U.S. 5th Cir., 1986)………………………………..13,15,21

Metro Riverboat Associates, Inc., vs. Bally's Louisiana, Inc. et al 142 F. Supp. 2d 765 (2001)…………………………………………………………………………………………6,7,8

Montecino vs. State of Louisiana, 55 F. Supp. 547 (June 28, 1999)………………….…...17,18,19

Parratt vs. Taylor, 451 U.S. 527, 101 S.Ct. 1906, 68 L.Ed. 420, (1981)………………13,14,15,21

Ruckelshaus v. Monsanto co., 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed. 2d 815 (1984)….18

United Home Rentals, Inc. vs. Texas Real Estate Commission, 716 F.2d 324 (5th Cir. 1983)…..7

Webb's Fabulous Pharmacies, Inc. vs. Beckwith, 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980)………….………………………………………………………………………………18

Will vs. Michigan Department of State Police, 491 U.S. 58;109 S.Ct. 2304 (1989)…………1,20

Wilson vs. Valley Electric Membership Corp., et al, 8 F.3d 311 (1993)……………………...6,8

Webb's Fabulous Pharmacies, Inc. vs. Beckwith, 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980)………………………………………………………………………………………18

**MAY IT PLEASE THE COURT:**

This memorandum is submitted on behalf of Alvin Topham in response to this Honorable Court's Judgment of January 4th, 2012, in which the Court sua sponte raised the issue of the subject matter jurisdiction of the court based upon several issues which the Court specifically requested that the parties address.   Defendant submits to the Court that the jurisprudence applicable to the facts which address the questions raised by this Court clearly establishes that this Honorable Court lacks subject matter jurisdiction over this matter, as set forth below.

**Issue one:**

    (1)    Although the State of Louisiana is not specifically named as a defendant, is this suit not, in essence, one against the State of Louisiana and therefore barred under the 11th Amendment of the United States Constitution?

Alvin Topham has nominally been named a defendant in his "capacity as the Chairman of the Louisiana State Wrestling Commission", which can only be interpreted as his being sued in his "official capacity".   Only his actions in his official capacity are called into question by the plaintiff's allegations. It is well established tenet of law that a suit against a state official in their official capacity is not a suit against the officials but rather a suit against the officials' offices and, thus, is no different from a suit against the State itself.   In *Will vs. Michigan Department of State Police, 491 U.S. 58;109 S.Ct. 2304 (1989),* the U.S. Supreme Court held that neither a state nor state officials acting in their official capacities were "persons" under the definitions of the federal civil rights statutes, and thus neither were amenable to suit.  In *Will, id.* the petitioner filed suit in Michigan state court under 42 U.S.C. 1983 alleging that the Dept. of State Police and the Director of the State Police had denied him a promotion for

an improper reason actionable under 42 U.S.C. 1983.  The state court judge ruled for the

petitioner, finding both the state police and the director were "persons" under section 1983.

The State Court of Appeal vacated the judgment against the Dept., holding that a State is not

a person under 1983, but remanded the case on the question of the status of the Director's

possible immunity.  The State Supreme Court agreed the State was not a person under section

1983, but also held that a state official acting in his or her official capacity is also not a

"person" under section 1983.  Certiorari was granted and the Supreme Court held that neither

States nor state officials acting in their official capacities are "persons" within the meaning of

section 1983.  The Supreme Court stated that the doctrine of sovereign immunity is one of

the well-established common-law immunities and defenses that Congress did not intend to

override in enacting section 1983.


Additionally, the plaintiff is seeking only monetary damages from Alvin Topham, which

in accordance with State law, must inevitably come from the general revenues of the State of

Louisiana, in accordance with LSA R.S. 13:5108.1 which provides:

A. Indemnification.

(1) The state shall defend and indemnify a covered individual against any claim,
demand, suit, complaint ,or petition seeking damages filed in any court over alleged
negligence or other act by the individual, including any demand under any federal
statute when the act that forms the basis of the cause of action took place while the
individual was engaged in the performance of the duties of the individual's office,
employment with the state, or engaged in the provision of services on behalf of the
state or any of its departments pursuant to Paragraph (E)(2) of the Section.

E. Definition

As used in this Section "covered individual" includes:

(1)  An official, officer, or employee holding office or employment:

(a)  In the executive branch of state government or in any department, office, division, or agency thereof.

LSA-R.S.4:61(F) makes it clear that Mr. Topham as the Chairman of the Commission, and duly appointed by the governor, is an employee of the executive branch, thus falls squarely under the provisions of title 13:5108.1

LSA R.S.4:61 provides:

A.  There is hereby created a State Boxing and Wrestling Commission within the office of the governor.  It shall consist of seven members, all of whom shall be appointed by the governor to serve at the pleasure of the governor making the appointment.  Five members appointed by the governor shall be appointed, one from each Public Service Commission District and two from the state at large. Each appointment by the governor shall be submitted to the Senate for confirmation.  The governor shall designate one member as chairman, one member as secretary, and one member as vice chairman….

In the seminal case of *Edelman vs. Jordan, 415 U.S. 651, 94 S.Ct 1347, 39 L.Ed 2d 662 (1974),* a class action was brought against Illinois officials who were administering the federal-state program of aid to the aged, blind and disabled.  The suit sought injunctive and declaratory relief, as well as retroactive payment of funds which the plaintiffs alleged had been improperly withheld due to improper application of state law in conflict with federal regulations.  The district court ruled in favor of the plaintiffs and the court of appeals affirmed.  Certiorari was granted and the Supreme Court held that the 11th amendment barred a suit by private individuals in federal court, seeking to impose a liability payable from public funds in the state treasury, if the state does not consent to suit.  The Court in its decision also noted that it was well established that even though a State is not a named party to the action, the suit may nonetheless be barred by the Eleventh Amendment, citing *Ford Motor Co., vs. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)* in which the Court said:  When the action is in essence

one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. Id., at 464, 65 S.Ct. at 350.

In this case, as Alvin Topham is sued in his capacity as Chairman of the Louisiana State Boxing and Wrestling Commission, and as his defense and indemnity by the State of Louisiana is established by State Statute, and as the plaintiff is seeking only payment of monetary damages, there is no question that this is a suit by a private person against the State who is the real party in interest, seeking damages that will ultimately be paid from the State Treasury, thus it is barred by the 11th amendment.

**Issue Two**

(2)    Does this Court have jurisdiction to consider what appears to be entirely a case involving state regulations of a state industry?

The State of Louisiana has established a complex, comprehensive and coherent regulatory scheme governing the conduct of all professional boxing, wrestling, and mixed technique events conducted within the State at LSA R.S. 4:61 through R.S. 4:85, and which is also governed by provisions of the Louisiana Administrative Code.

LSA R.S. 4:61 provides in pertinent part:

> B. The (boxing and wrestling) commission has sole and full discretion, authority, management, regulation, and control of all professional boxing, mixed technique events, and wrestling contests held, conducted, or given within this state, and such other powers and duties specified in this Chapter, and all other powers necessary and proper to enable it to execute fully and effectively all of the objects, purposes, duties, and policies of this Chapter…

C.   The commission shall be domiciled in and shall maintain an office in the city of New Orleans, where and only where it may be sued.  The commission may sue to enforce the provisions of this Chapter in any of the courts in the state.

D.  The commission may make any rules and regulations for the administrations of its affairs as are not inconsistent with the terms and provisions of this Chapter.  Four members of the commission constitute a quorum, and the concurrence of at least four members is necessary to render a decision, one of whom must be the chairman and one of whom must be the vice chairman or the secretary.

F.  No member of the commission shall be liable in a civil action for any act performed in good faith in the execution of his duties as a commission member.

R.S. 4:63 provides for the duties of the secretary of the commission;
R.S. 4:64 provides the specific areas over which the commission has rule making authority;
R.S. 4:65 provides the authority for the issuances and revocation of licenses and the imposition of fees and bonds;
R.S. 4:66 provides for the issuance of Professional boxing contracts and permits;
R.S. 4:67 provides for gross receipts taxes, deputy commissioners and doctors and disbursements of gross receipts;
R.S. 4:68 provides for reports of gross receipts, payments of taxes, issuance of complimentary tickets;
R.S. 4:69 provides for failure to make reports or remittance; unsatisfactory or false reports;
R.S. 4:70 provides for physicians and emergency medical personnel;
R.S. 4:71 provides for buildings and structures, exceeding seating capacity in sale of tickets or issuance of invitations;
R.S. 4:72 provides for proximity of seats to ring, seating for commission;
R.S. 4:73 provides for tickets;
R.S. 4:74 provides for admission of persons under the age of sixteen;
R.S. 4:75 provides for sham for fake contests for exhibitions;
R.S. 4:76 provides for shamming or faking by contestants;
R.S. 4:77 provides for contestants to be in city three days before contests and period between contests;
R.S. 4:78 provides for seconds;
R.S. 4:79 provides for referees and judges; appointment of event coordinators;
R.S. 4:80 provides for representing contestants, sharing purse; payment of purse;
R.S. 4:80.1 provides prohibition against open betting or odds making; insulting or abusive remarks;
R.S. 4:81.1 provides for tough man contests prohibition;
R. S. 4:82 provides for non-compliance with Chapter, penalties;
R.S. 4:82.1 provides for non-compliance with Chapter, criminal penalties;
R.S. 4:82.2 provides for non-compliance with Chapter, injunction;

R.S. 4:83 provides for the application of the Chapter;
R.S. 4:84 provides that the Administrative Code procedures apply to Chapter;
R.S. 4:85 provides Definitions and construction;

LSA R.S. 4:65C provides with respect to the revocation of a mixed martial arts promoter's license such as the one at issue in this case:

C. The commission may for cause, and after a hearing, revoke or suspend any license issued under the provisions of this Chapter, or may fine the holder of such license the sum of not more than one thousand dollars, or both, for any of the following reasons:

(1) Violation of any provisions of this Chapter;

(2) Violation of any of the rules or regulations of the commission;

(3) Finding that the licensee has committed an act detrimental to the interests of boxing, mixed technique event, or wrestling generally or to the public interest, convenience, or necessity;

(4) Finding that the licensee has been guilty of or attempted any fraud or misrepresentation in connection with boxing, mixed technique event, or wrestling; or

(5) Finding that a licensee is under suspension or has had his boxing, mixed technique event, or wrestling license revoked in another jurisdiction.

The plaintiffs' complaint in this case acknowledges that a hearing was held under the provisions LSA R.S. 4:65C but seeks a ruling from this Court that such hearing was a "sham proceeding" and thus a denial of due process under federal law.  Defendant submits that this Court should abstain from a review of the State of Louisiana's statutory scheme established to comprehensively regulate this state industry under the *Burford* abstention doctrine as applied in *Metro Riverboat Associates, Inc., vs. Bally's Louisiana, Inc. et al 142 F. Supp. 2d 765 (2001)* and *Wilson vs. Valley Electric Membership Corp., et al, 8 F.3d 311 (1993).*

In *Metro Riverboat Associates, Inc., supra.* the court was called upon to adjudicate a dispute over the control of a  riverboat gaming license and the profits to be derived therefrom among numerous litigants asserting numerous claims including the allegations that a transfer of an interest in the gaming license violated the RICO Act.  The District court in ruling that *Burford* abstention was warranted in the case, noted that it reviewed the complaint, the applicable state regulatory scheme, as well as the applicable administrative proceedings, and would on its own motion abstain from further action on the proceedings before it, citing the *Burford* abstention doctrine and quoting from *Wright & Miller*:

> *"Burford-type abstention…is premised on a belief that in particular areas of the law any intervention by the federal court would have in impermissibly disruptive effect on state policies…"*

*17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure section 4245 at 101 (2d ed. 1988); United Home Rentals, Inc. vs. Texas Real Estate Commission, 716 F.2d 324 (5th Cir. 1983).*

The Court in *Metro, supra*, discussed the development of the jurisprudence since Burford and noted five factors that had been identified for the courts to consider in making the determination of whether to abstain from asserting jurisdiction under the Burford doctrine, which include:

(1) Whether the cause of action arises under state or federal law;

(2) Whether the case required inquiry into unsettled issues of state law or into local

facts;

(3) The importance of the state interest involved;

(4) The state's need for a coherent policy in the area;

(5) The presence of a special state forum for judicial review;

citing *Wilson, 8 F.3d at 314*

The court in *Metro, supra*, discussed the fact that the gravamen of the suit centered on the legality of the ownership of a gambling enterprise, the legality of the transfer of ownership of a gambling enterprise, the legality of the assignment of management rights of that gambling establishment, the effect of the transfers on the terms of an Operating Agreement, and ultimately the control of the revenues generated by the gambling establishment.  The District Court went on to note that the State of Louisiana had created a comprehensive administrative and regulatory scheme embodied in the Louisiana Gaming Control law found at La. Rev. Stat 27:3 et seq. by which the Louisiana legislature had created an administrative agency to regulate and enforce its intent and policies. The court noted that a gaming control board had been created that had all regulatory authority, control and jurisdiction over all aspects of gaming activities and operations with power to hear any matter disputed or contested in accordance with the adjudication procedures of the Administrative Procedures Act.   Appeals from the decision must be filed in the 19th Judicial District Court.  The court went on to state that to abstain based upon the *Burford* doctrine is also indicated where there are important issues of public policy, noting that certainly, the very language of the Louisiana Gaming

Control Laws establish the importance the state legislature places on the regulation of the industry.   The Court concluded: where there is (1) a comprehensive state regulatory scheme, (2) a large interest of the state in regulating a particular resource or area of the law (e.g. the insurance industry or family law), and (3) a need for unified approach to granting permits by a single adjudicatory body, courts have been instructed to abstain. Certainly, public policy questions are implicated by the salient issues raised by plaintiffs, and the state has indicated that it has a paramount interest in resolving these questions.

In the case before the Court, a review of the five factors noted above militates strongly in this Court's exercising its' discretion to decline jurisdiction for the reasons raised by the Court-this case involves a case entirely dealing with state regulations of a state industry.

In applying the five factors discussed by the court in *Metro, supra*, it becomes clear that abstention is warranted here:

**(1) Whether the cause of action arises under state or federal law;**
The plaintiff is asserting a due process violation due to the State Wrestling Commission's revocation of his promoter's license under authority of LSA R.S. 4:65 C.

**(2) Whether the case required inquiry into unsettled issues of state law or into local facts;**

The facts of the case are entirely local and center around the Commission hearing held in New Orleans, Louisiana, and on evidence presented at such hearing, as well as on decisions made by the Chairman of the Commission who is domiciled in New Orleans.  The issues in the case also delve into the discretion of the Commission in exercising its' jurisdiction granted under LSA R.S. 4:61 and 4:65(C) and the application of substantive provisions of R.S. 4:65(C), and the good faith immunity granted to commission members from civil liability under the state law provisions of LSA R. S. 4:61F.

**(3) The importance of the state interest involved;**

The legislature has established a comprehensive regulatory scheme to regulate a particular resource in this state, which is boxing, wrestling and mixed technique sports.   These promotions take place statewide and the commissioners are appointed from each of the public service commission districts for this reason. The regulation of these sports activities, as evidenced by the subject matter of the statutes referenced in the foregoing memorandum, implicate areas of public revenues, health, gaming laws; and have criminal law implications as well.  The commission has purposefully been given discretion to exercise its authority to regulate the industry to address the myriad factual situations which arise out of the circumstances presented by the very nature of the sport involved.  There is a need for a unified approach to both the granting and the revoking of licenses to promoters of the sport, consistent with the rules and regulations established by the governing body.

**(4)     The state's need for a coherent policy in the area;**

Because the boxing, wrestling and mixed technique events take place statewide and involve numerous promoters and contestants, there is a need for coherent policy in the area as established by the statutory scheme and the commission rules and regulations applied uniformly.

**(5)     The presence of a special state forum for judicial review**;

LSA R.S. 4:65C provides for a hearing before the commission prior to any suspension or revocation of a promoters license, or prior to imposition of any fines or penalties under the statutory scheme for violations of any of the commission rules or regulations. LSA R.S. 4:61C provides that the commission may be sued for review of any decision rendered under the provisions of the Chapter in the District encompassing the city of New Orleans.  Thus a special state administrative forum exists as well as a special judicial forum for redress of any grievances arising from commission decisions.

Certainly it can be said that all of the foregoing factors, together with the laws established by LSA R.S. 4:61 et seq. which regulate the boxing, wrestling and mixed technique industry in the State of Louisiana, in conjunction with the rules promulgated by the commission, demonstrate a distinct and avid interest on the part of the State of Louisiana in regulating the boxing, wrestling and mixed technique sports industry throughout the state. Based upon all of the foregoing, it seems clear that the state has indicated that it has paramount interest in resolving the questions raised by the plaintiffs' suit, such that *Burford* abstention is squarely implicated in this case.

**Issue Three:**

Where Due Process rights in licensing revocation are provided by a state <u>statute</u>, does a breakdown in that process involve a <u>federal</u> right?

The gravamen of the plaintiffs' complaint in this case is that Alvin Topham, as the Chairman of the Louisiana Wrestling Commission, "conspired" with co-defendants Douglas Guillory and Kim Addison (both private citizens) to create a "sham administrative prosecution" of Broyles and Ring Media, solely to quash the plaintiffs' competitive business. The plaintiffs' do not assert the lack of state procedural due process, but do assert the intentional misconduct of Alvin Topham in the application of that process and in the conduct of the administrative hearing, and the imposition of various requirements and rules and regulations imposed by the commission pursuant to the authority granted under LSA R.S. 4:61 et seq.

In this case, LSA R.S. 4:65 A. (1) provides:

The commission may issue a promoter's license to hold, conduct, mixed technique event, and wrestling contests or exhibitions to any applicant, including, in the case of corporations, its officers and stockholders, who, in the discretion of the commission, has the financial responsibility, experience, character, and general fitness, to be such that the licensing of such applicant will be consistent with the public interest, convenience and necessity and with the best interests of boxing, mixed technique event, or wrestling generally and in conformity with this Chapter and the rules and regulations of the commission.  Such license shall be issued for one calendar year, and the commission may require applicants therefor to submit their applications prior to the commencement of the calendar year. *The holding of such a license shall not be*

*construed to grant the licensee a vested right to have the license renewed for the following calendar year.*

The State of Louisiana provides a pre-termination hearing and opportunity to be heard prior to the revocation of a previously granted one year promoters license under the provisions of LSA R.S. 4:65(C).  Defendant submits that this state statutory provisions is adequate to satisfy the due process requirements for the arguable property interest in the one year license granted by the provisions of LSA R.S.A (1), while the provisions of the statute make it clear that there is not vested property interest in the renewal of the license beyond that one year period.

Assuming for the sake of argument that the plaintiffs' allegations of fact are true, defendant submits that federal law has long held that where a state system as a whole provides due process of law, federal constitutional guarantees are not breached merely because some state employee, even a highly-placed one, might engage in tortious conduct, either intentionally or negligently. *Holloway vs. Walker 790 F.2d 1170 (U.S. 5th Cir., 1986),* citing the *Parratt/Hudson* doctrine.  In *Holloway, id.,* an oil company brought a section 1983 suit against, inter alia, a state court judge for conspiracy to deprive the oil company of its property through denial of a fair trial in state court. The U.S. District Court denied the judge's motion to dismiss, the Court of Appeals reversed in part and dismissed in part; on remand the District Court dismissed and the oil company appealed.   The Court of Appeals affirmed at 784 F.2d 1287 and on petition for rehearing, the Court held that where the state system as a whole provides due process of law, federal constitutional guarantees are not breached merely because some state employee, even a

highly placed one, might engage in tortious conduct, either intentionally or negligently, resulting in deprivation of liberty or property.

Though the U.S. Supreme Court later modified its' ruling in *Parratt* in the case of *Daniels vs. Williams, 106 S.Ct. 677 (January 21, 1986),* to hold that due process is not implicated by state officials negligent acts that result in deprivation of liberty or property, the case is instructive in its' discussion of the nature of a state employee's actions vis a vis a state's procedural mechanisms' to address alleged liberty or property deprivations as is asserted in this case and the issues raised by this court regarding the breakdown in the State of Louisiana's statutorily provided procedures and whether they comport with due process.   In *Parratt vs. Taylor, 451 U.S. 527, 101 S.Ct. 1906, 68 L.Ed. 420, (1981),* an inmate whose mail order hobby kit was lost when normal procedures for receipt of mail packages were not followed brought suit under section 1983 against prison officials to recover their value.  The U.S. District Court for the District of Nebraska granted summary judgment for the prisoner and the U.S. Court of Appeals for the Eighth Circuit affirmed, and certiorari was granted. The Supreme Court held that although the prisoner had been deprived of property under color of state law, he had not sufficiently alleged a violation of the Due Process Clause of the Fourteenth Amendment because the deprivation at issue had not occurred as the result of some established state procedure, but as the result of the unauthorized failure of state agents to follow established state procedure. Moreover, and as exists in this case, the Supreme Court noted that the State of Nebraska had a tort claims procedure which provides a remedy to persons who  have suffered loss at the hands of the State, but which respondent did not use.  Such procedure could have fully compensated the plaintiff for his loss and was sufficient to satisfy the requirements of due process.

In *Hudson vs. Palmer, 468 U.S. 517, 104 S.Ct.3194, 82 L.Ed.2d 393 (1984),* the Supreme Court extended the *Parratt, supra* doctrine and held that the logic of *Parratt, supra* applies equally to unauthorized intentional deprivations of property by state officials.  In *Hudson*, *id.* a prisoner alleged that a prison guard intentionally destroyed some of his personal property during a "shakedown" of his cell for purported contraband, through the real purpose was solely for harassment.  The inmate brought suit against the officer under federal civil rights statutes alleging destruction of his property.  The District Court granted summary judgment in favor of the guard and the Fourth Circuit Court of Appeal affirmed in part and reversed in part and remanded.  The Supreme Court granted certiorari and held that an unauthorized intentional deprivation of property by prison guard did not constitute a violation of due process clause because meaningful post deprivation remedies existed under Virginia state tort law.

In the case before the Court, pre-deprivation remedies and procedures exist under the statutory scheme established by the Louisiana Legislature set forth at LSA R.S. 4:61 et seq. Though plaintiffs allege tortious conduct on the part of defendant in connection with his activities pursuant to those statutes, they do not deny the existence of any pre-deprivation notice or  opportunity to be heard.  The plaintiffs have in fact acknowledged in the petition that such hearing took place.  In addition to the foregoing, adequate post-deprivation remedies exist under state tort law, and a state law forum is provided by statute for plaintiffs to seek the damages which are being claimed in this action. Thus in accordance with the holdings under *Parratt, Hudson and Holloway*, no Federal Due Process Rights are implicated in this case.

**Issue Four:**

To what extent does a renewable state licensing procedure result in a protected property interest?  In asking this question, we observe that tenure as a professor may well be protected but a driver's license may well not.  Where does a license to promote wrestling fall in the continuum between these?

In determining whether a state licensing procedure results in a protected property interest, one must look to state law or convention.  As the Supreme Court noted in *Board of Regents, et al. vs. Roth, etc. 408 U.S. 564; 92 S.Ct. 2701, 33 L.Ed. 2d 548 (1972),* "Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by the existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure those benefits and that support claims of entitlement to those benefits. *Roth, id. at pg. 577.*

In this case, LSA R.S. 4:65 A. (1) provides:

The commission may issue a promoter's license to hold, conduct, mixed technique event, and wrestling contests or exhibitions to any applicant, including, in the case of corporations, its officers and stockholders, who, in the discretion of the commission, has the financial responsibility, experience, character, and general fitness, to be such that the licensing of such applicant will be consistent with the public interest, convenience and necessity and with the best interests of boxing, mixed technique event, or wrestling generally and in conformity with this Chapter and the rules and regulations of the commission.  Such license shall be issued for one calendar year, and the commission may require applicants therefor to submit their applications prior to the commencement of the calendar year. *The holding of such a license shall not be construed to grant the licensee a vested right to have the license renewed for the following calendar year.*  The number of licenses to be issued to hold, conduct, or give boxing, mixed technique event, or wrestling contests or exhibitions in any particular parish shall be determined by the commission, in its discretion consistent with the public interest, convenience, or necessity and with the best interests of boxing and wrestling generally.

LSA R.S. 4:65(C) provides that:

C. *The commission may for cause, and after a hearing, revoke or suspend any license issued under the provisions of this Chapter,* or may find the holder the sum of not more than one thousand dollars, or both, for any of the following reasons:

(1)  Violation of any provision of this Chapter

(2)  Violation of any of the rules or regulations of the commission;

(3)  Finding that the licensee has committed an act detrimental to the interests of boxing, mixed technique event, or wrestling generally or to the public interest, convenience or necessity;

(4) Finding that the licensee has been guilty of or attempted any fraud or misrepresentation in connection with boxing, mixed technique event, or wrestling; or

(5)  Finding that the licensee is under suspension or has had his boxing, mixed technique event, or wrestling license revoked in another jurisdiction.

Defendant would note, as acknowledged by the plaintiffs in their complaint for damages, that a pre-deprivation hearing was held in this case, with notice, and opportunity to be heard, in compliance with the provisions of LSA R.S. 4:65(C).

Defendant would also note that the provisions of LSA R.S. 4:65 A. (1) clearly establish that no vested property interest in the promoter's license is created under state law by the mere issuance of such license to a promoter under the provisions of the Chapter.

Defendant submits that the form of property interest created by the provisions of LSA R.S. 4:65 A.(1)  falls on the continuum between the tenured professor and a driver's license more akin to that such as created under the renewable licensing scheme under Louisiana's Gaming Control Law.  In *Montecino vs. State of Louisiana, 55 F. Supp. 547 (June 28, 1999),* the operators of video poker machines brought a section 1983 action to prevent the State of Louisiana from implementing the results of local option elections by

terminating operation of video poker machines in 33 parishes that voted "no" to continued operation of such machines in a video poker referendum.  The operators moved for a preliminary injunction and the State moved to dismiss.  The District Court held that the enforced cessation of video poker in some parishes was not a violation of the takings clause of the U.S. Constitution, nor a violation of procedural due process.  In reaching this decision, the District Court quoted from numerous Supreme Court decisions:

> "Property interests…are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.

*Ruckelshaus v. Monsanto co., 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed. 2d 815 (1984); Webb's Fabulous Pharmacies, Inc. vs. Beckwith, 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).*

The District Court in *Montecino, supra.*, noted that in the case before it, Louisiana law explicitly provides:

> Any license, casino operating contract, permit, approval, or thing obtained or issued pursuant to the provisions of [the Louisiana Gaming Control Law] or any other law relative to the jurisdiction of the board is expressly declared by the legislature to be a pure and absolute revocable privilege and not a right, property or otherwise, under the constitution of the United States or of the State of Louisiana.  Further, the legislature declares that no recipient of any such license, casino operating contract, permit, any other thing, or affirmative board action or approval acquires any vested interest or right therein or thereunder.  La. Rev. Stat. 27:2(B).

The Court in *Montecino supra.,* went on to note that La. Rev. Stat. 27:301(D) provided that "any license issued or renewed under the provisions of [the Video Draw Poker Devices Control Law] is not a property or protected interest under the constitutions of either the United States or the state of Louisiana.  The Court stated that the conduct that the plaintiffs sought to enjoin was functionally the revocation of video poker licenses in 33 Louisiana parishes. The Court dismissed the plaintiffs' arguments that they were being deprived of their businesses and livelihoods as being off-target as the central interest at issue was the interest the plaintiffs had in video poker operations which had been declared by the state legislature not to constitute a property interest.  Based upon the foregoing, the District Court held that the state-enforced cessation of video poker in some parishes was not a violation of the takings clause or procedural due process, as the plaintiffs had no constitutionally protected property interest in their video poker licenses as a matter of state law.

The statutory scheme established by the Louisiana legislature for the establishment of the Boxing and Wrestling Commission and the issuance of renewable promoters' licenses in the state is very similar to that establishing the Louisiana Gaming Commission and the Louisiana Gaming Control Law and the Video Draw Poker Devices Control law.  Specifically, the commission in both cases was given broad discretion in the issuance and regulation of the licenses over which they had jurisdiction and in both cases, the legislature specifically and explicitly declared that the issuance of such license to any particular licensee did not create any vested rights in such license.

## CONCLUSION

Issue one:

Alvin Topham has been named as a defendant in his official capacity as the chairman of the Louisiana State Wrestling Commission.  In accordance with the holding of the U.S. Supreme Court in *Will vs. Michigan Department of State Police, 491 U.S. 58;109 S.Ct. 2304 (1989)*, and *Edelman vs. Jordan, 415 U.S. 651, 94 S.Ct 1347, 39 L.Ed 2d 662 (1974),* under the facts of this case, it is clear that it is the State of Louisiana who is the real party in interest, therefore the suit is barred by the 11th Amendment to the U.S. Constitution.

Issue two:

The State of Louisiana has enacted a comprehensive statutory scheme for the regulation and operation of the boxing, wrestling and mixed technique sports' industry in the State. Based upon this active assertion of its interest to fully regulate this important state economic activity, it is submitted that *Burford*-type abstention is warranted in this case, as intervention in this particular area of law by the federal court would have an impermissibly disruptive effect on state policies.

Issue three:

With respect to a previously granted one year license, LSA R.S. 4:65C. provides for a pre-deprivation hearing and opportunity to be heard, which comports with constitutional due process concerns where a protected liberty or property interest is involved.

Consistent with the holding of the U.S. 5th Circuit Court of Appeal in *Holloway, supra,* and the *Parratt/Hudson* doctrine of the U.S. Supreme Court, where the state system as a whole provides due process of law, federal constitutional guarantees are not breached merely because some state employee, even a highly placed one, might engage in tortious conduct, either intentionally or negligently, resulting in deprivation of liberty or property.

Issue four:

With respect to whether or not the plaintiffs in this case possess a vested property right in a promoters license beyond the one year period set forth in LSA R.S. 4:61A, one must determining whether a state licensing procedure results in a protected property interest by looking to state law or convention.

LSA R.S. 4:65 A.(1) provides:

The commission may issue a promoter's license to hold, conduct, mixed technique event, and wrestling contests or exhibitions to any applicant… *The holding of such a license shall not be construed to grant the licensee a vested right to have the license renewed for the following calendar year*.

It is submitted that under this statutory scheme, no vested property rights are created in the holder of such a license, other than what was admittedly granted in this case-notice and the opportunity to be heard at a hearing prior to the revocation or suspension of any *previously* granted license, in accordance with LSA R.S. 4:65C.  A holder of a previously granted license possesses no right to renewal of such license for any subsequent years.

Defendant submits that plaintiffs were afforded all due process to which they were entitled in connection with this case.

Respectfully submitted,
**JAMES D. "BUDDY" CALDWELL**
**ATTORNEY GENERAL**

**By:    s/   Victoria R. Murry  (18584)**
**Assistant Attorney General**

**LOUISIANA DEPARTMENT OF JUSTICE**
**LITIGATION DIVISION**
429 Murray Street, 4th Floor (71301)
Post Office Box 1710
Alexandria, LA 71309
Telephone:  (318) 487-5944
Facsimile: (318) 487-5826

## <u>CERTIFICATE OF SERVICE</u>

I hereby verify that a copy of the foregoing Supplemental Memorandum in Support of MOTION TO DISMISS PETITION UNDER FRCP 4(m) was served upon all unrepresented parties personally and upon all represented parties through their counsel of record as follows:

Petitioners Will Broyles and Ring Media Group, LLC
Electronically through their counsel of record:

Bryce Denny
209 Polk Street
Mansfield, LA 71052
Tel: (318) 871-5007
Fax: (318) 871-5006
Email: bryce@brycedenny.com

On Kim Addison electronically:

Kim Addison
8841 Kingston Rd
Shreveport, LA 71118
(318) 402-6644

On Douglas Guillory through the U.S. Mail:

Douglas Guillory
303 Quail Dr.
Lafayette, LA 70508

This <u>23rd</u>, day of January  at Alexandria, Louisiana.

s/  Victoria R. Murry
OF COUNSEL