RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 7/26/13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

WILL BROYLES, ET AL.

VERSUS

ALVIN TOPHAM, ET AL.

DOCKET NO.: 1:10-cv-001580

DISTRICT JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

REPORT AND RECOMMENDATION

On May 15, 2013, Chief Judge Dee D. Drell ordered the parties to address several issues raised sua sponte. Those issues included:

   I. Whether the suit is essentially one against the State of Louisiana and is therefore barred by the Eleventh Amendment;

   II. Whether this court has jurisdiction to consider a case involving the state regulation of a state industry;

   III. Whether a federal right is implicated when due process rights created by a state statute break down; and

   IV. Whether a renewable state licensing procedure results in a protected property interest.

All parties have submitted briefs on the aforementioned issues and the matter is ripe for report and recommendation.

BACKGROUND

On October 15, 2010 plaintiffs, William Broyles III ("Broyles") and Ring Media Group, L.L.C. ("Ring Media"), filed a civil rights complaint pursuant to 42 U.S.C. §1983 and §1988 against Douglas "Gil" Guillory ("Guillory"), Kim Addison ("Addison") and Alvin Topham ("Topham") in their individual

capacities. Plaintiffs also asserted supplemental state law claims against Addison and Guillory pursuant to La.C.C. art. 2315 for unfair trade practices and for abuse of process.

The Louisiana State Boxing and Wrestling Commission ("LSBWC") issued plaintiffs a license to promote mixed martial arts ("MMA") fights in Louisiana. Plaintiffs promoted MMA shows in several states including Louisiana and operated under a business model where they would book and promote multiple shows at one time. This differed from the way other promoters licensed by the LSBWC operated in that they promoted only one or two shows at a time. Plaintiffs contend Topham and his fellow defendants targeted them in an effort to quash their business in Louisiana.

Plaintiffs allege Topham stringently enforced existing LSBWC rules and regulations solely against them and established his own set of rules and regulations which applied only to plaintiffs. For example, Topham established a rule that no more than two MMA shows could be promoted at one time and he required plaintiffs to hire unnecessary and often incompetent officials to man their shows. These officials were specified by Topham and the fees charged for their services were both improper and excessive.

Topham also engaged in favoritism toward other promoters by arbitrarily cancelling plaintiffs' shows and providing dates to his former business connections. And, though plaintiffs' casino shows were supposed to be afforded "special consideration", Topham

2

focused on the promotion of other promoters' shows. He event set up and advertised a "sham MMA show" to interfere with the plaintiffs' show at an area casino.

Finally, Topham, Guillory and Addison conspired to create a sham administrative prosecution of plaintiffs in an effort to quash their business. Topham telephoned plaintiffs' customers and falsely stated Broyles' promoters license was suspended. He also obtained "sham testimony" from a man who did not have a promoter's license by promising the man the opportunity to promote two fights. This and the other conduct was all designed to disrupt and/or quash plaintiffs' business and aid promoters favored by Topham.

## Law and Analysis

I. **Is this lawsuit essentially one against the State of Louisiana and, therefore barred by the Eleventh Amendment?**

Section 1983 authorizes suits for damages against any person who acts under color of state law to deprive another person of any right, privilege or immunity secured by the Constitution and the laws of the United States. 42 U.S.C. §1983. The traditional definition of acting under color of state law requires that the defendants have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of the state law. To constitute state action, the depravation must be caused by the exercise of some right or privilege created by the state or by a person for whom the state is

3

responsible and the party charged with the deprivation must be a person who may fairly be said to be a state actor. West v. Atkins, 487 U.S. 42, 47 (1988).

A plaintiff may also prove a private citizen has acted under the color of state law to deprive him of his constitutional rights. However, to be actionable, the private and public actors must have entered into an agreement to commit an illegal act and a plaintiff's constitutional rights must have been violated. The plaintiff must allege specific facts to show an agreement. Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994); Gray v. Taser International, Inc., 2012 WL 1329119 (W.D.La. 2012)(Not Reported).

In Hafer v. Melo, 502 U.S. 21 (1991), the Supreme Court held "that state officials, sued in their individual capacities, are 'persons' within the meaning of §1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under §1983 solely by virtue of the 'official' nature of their acts." Id. at 31. See Wilson v. UT Health Ctr., 973 F.2d 1263, 1271 (5th Cir. 1992).

This lawsuit is filed against all three defendants in their individual capacities. The allegations against Topham, a state official, show he acted in his individual capacity by abusing the power of his office to prevent plaintiffs' from promoting MMA shows in Louisiana. Guillory and Addison who are private citizens are alleged to have conspired with Topham to bring a "sham

administrative proceeding" against plaintiffs who were their competitors. All three defendants are alleged to have acted without regard to plaintiffs' due process rights in that they deprived them of their property right in their license to conduct business in Louisiana.

Accordingly, this lawsuit is not, in essence, a case against the State of Louisiana and it should not be named as a defendant. All claims against Topham are properly asserted against him in his individual capacity, not his official capacity. Further, Guillory and Addison are properly made parties to the lawsuit. Despite being private citizens, they are alleged to have conspired with Topham, a state actor, to deprive plaintiffs of their property right/promoter's license by creating a "sham administrative prosecution" to ruin their reputation and business opportunities in Louisiana.

## II. Whether this court has jurisdiction to consider a case involving the state regulation of a state industry.

Abstaining from the exercise of federal jurisdiction is the exception, not the rule. Sierra Club, Inc. v. Sandy Creek Energy Assc.'s, L.P., 627 F.3d 134 (5th Cir. 2010), cert. dismissed 132 S.Ct. 872 (2011). In Burford v. Sun Oil Co., 319 U.S. 315 (1943), the Supreme Court found that state courts were able to review matters involving state policy both expeditiously and adequately. The Court also found that intervention in such matters would likely

create conflicts in the interpretation of state law. Accordingly, the Court held "a sound respect for the independence of state action requires the federal equity court to stay its hand." Id. at 327-34.

Plaintiffs contend that Burford abstention is inapplicable to this case as they only seek monetary damages. This statement is only partially correct. The Supreme Court specifically stated it "ha[s] not held that abstention principles are completely inapplicable in damages actions. Burford might support a federal court's decision to postpone adjudication of a damages action pending the resolution by the state courts of a disputed question of state law." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 730-31 (1996). "[F]ederal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." Id. at 731. Accordingly, plaintiffs contention that Burford abstention is inapplicable because they only seek monetary damages is only partially true. What must also be determined is whether "equitable or otherwise discretionary" relief is sought and whether there is a necessity to inquire into unsettled issues of state law and/or whether a disputed question of state law is pending.

As plaintiffs do not seek equitable or discretionary relief and there is no indication an unsettled question of state law exists in or outside of the courts, I recommend that the district

6

judge find the principles of abstention inapplicable.

### III. Whether a federal right is implicated when due process rights created by a state statute break down.

Plaintiffs argue Louisiana law provides due process to LSBWC license holders only when that license is granted, denied or revoked, not when it is arbitrarily changed. I disagree.

In <u>Parratt v. Taylor</u>, 451 U.S. 543 (1981), a prisoner filed a §1983 complaint seeking monetary damages related to the random and unauthorized taking of his hobby kit by a prison officer. The Supreme Court found that a pre-deprivation hearing was impossible due to the unforeseen nature of the depravation. The Court then found that the post-deprivation tort remedies provided by the state were sufficient to satisfy any due process concerns. In so holding, the Court noted two things:(1) the plaintiff did not argue the deprivation of property was a result of a constitutionally inadequate state procedure; and (2) to find "the conduct of state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under §1983." <u>Id.</u> at 541-44.

<u>Parratt</u> was then extended to the instance where the state actor intentionally deprived the plaintiff of his property. In <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), the Supreme Court found that

7

pre-deprivation hearings in instances of intentional deprivations of property were equally, if not more, impracticable due to the unforeseen nature of the incident. Accordingly, the Court held "that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available. Id. at 3204.

Plaintiffs' claim that due process is not afforded to LSBWC license holders who are subjected to sham rules and/or regulations is inaccurate. While Louisiana Revised Statute 4:65 may only apply in the case where a license is granted, suspended or denied, La.C.C. art. 2315 provides plaintiff with the opportunity to pursue a state law tort claim such as interference with business relationships. As an adequate state law remedy is afforded, no further due process is required. Further, as the Fourteenth Amendment is not implicated, the court is without jurisdiction to hear this case and it should be dismissed without prejudice.

**IV. Whether a renewable state licensing procedure results in a protected property interest.**

Though I find that this court is without jurisdiction to review this case, for the sake of completion, I will address whether plaintiffs had a property right in the promoter's license.

Topham argues "LSA R.S. 4:65 A. (1) clearly establish[es] that no vested property interest in the promoter's license is created

under state law by the mere issuance of such license to a promoter under the provisions of the Chapter." This argument is based upon the following sentence found in R.S. 4:65A(1):

> The holding of such a license shall not be construed to grant the licensee a vested right to have the license renewed for the following year.

This sentence does not "clearly" establish there is no property interest in the promoter's license. Rather, it states that there is no right to renewal.

Though the statute may not contain specific language regarding the vesting of property rights upon issuance of a promoter's license, it also does not preclude the vesting of such rights. Had the legislature intended not to convey a property right for the duration that the promoter held the license, it could have specifically done so. Instead, it drafted the statute to provide for a hearing prior to revocation or suspension of the license. As these basic elements of procedural due process are afforded in the statute, it stands to reason that the legislature saw the issuance of the license as creating a property right as long as the license was validly held.

## Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that the lawsuit be **DISMISSED** without prejudice as this court lacks jurisdiction.

Under the provisions of 28 U.S.C. Section 636(b)(1)© and Rule 72(b), parties aggrieved by this recommendation have fourteen (14)

9

days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** in chambers at Alexandria, Louisiana this 26th day of July, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE